This Opinion is a
Precedent of the TTAB

Mailed: March 27, 2015

UNITED STATES PATENT AND TRADEMARK OFFICE

―――

Trademark Trial and Appeal Board

―――

*In re House Beer, LLC*

―――

Serial No. 85684754

―――

Gene Bolmarcich, Esq. for House Beer, LLC.

Katherine Weigle, Trademark Examining Attorney, Law Office 101,
    Ronald R. Sussman, Managing Attorney.

―――

Before Bucher, Masiello, and Goodman,
    Administrative Trademark Judges.

Opinion by Masiello, Administrative Trademark Judge:

House Beer, LLC ("Applicant") has filed an application[1] to register on the

Principal Register the mark HOUSE BEER in standard characters for "Retail store

services featuring beer."

---

[1] Application Serial No. 85684754 was filed July 23, 2012 under Trademark Act § 1(b),
15 U.S.C. § 1051(b), on the basis of Applicant's stated *bona fide* intent to use the mark in
commerce. Applicant later filed an amendment to allege use claiming November 1, 2012 as
the date of first use and the date of first use in commerce. Applicant has disclaimed the
exclusive right to use the word "Beer" apart from the mark as shown.

The Trademark Examining Attorney refused registration under Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d), on the ground that Applicant's mark, as used in connection with Applicant's services, so resembles the registered mark HOUSE BEER as to be likely to cause confusion, or to cause mistake, or to deceive. The cited mark is registered on the Supplemental Register in standard character form for "Beer."[2] When the refusal was made final, Applicant appealed. The case has been fully briefed.

1.      Procedural issues.

Applicant's brief does not address the merits of the refusal under Section 2(d). Instead, Applicant focuses on certain incidents in the prosecution of the application underlying the cited registration (the "Underlying Application"). According to Applicant, the USPTO failed to follow certain required procedures during the examination of the Underlying Application. Applicant contends that, had those procedures been followed, the refusal now on appeal would not have issued.

Applicant has not made of record the file of the Underlying Application, but it has made of record a copy of the cited registration as issued.[3] The record also includes printouts from the USPTO database showing the status of the Underlying Application as of November 16, 2012,[4] July 23, 2013,[5] February 12, 2014,[6] and

---

[2] Registration No. 4449209 issued December 10, 2013. No claim is made to the exclusive right to use BEER apart from the mark as shown.

[3] Applicant's response of February 18, 2014 at 4-5.

[4] Office Action of November 16, 2012 at 5-6.

[5] Office Action (suspension letter) of July 23, 2013 at 3-4.

March 11, 2014.[7] From these materials, most of Applicant's factual contentions regarding the Underlying Application can be confirmed. Although that evidence is adequate for our purposes, the better practice would have been to file a copy of the relevant pages of the record of the Underlying Application, because the Board does not take judicial notice of the files of applications or registrations residing in the Office. *Edom Labs Inc. v. Lichter*, 102 USPQ2d 1546, 1550 (TTAB 2012); *see also In re Sela Products LLC*, 107 USPQ2d 1580, 1583 (TTAB 2013).

To begin, some background on standard examining procedure is in order. In general, the USPTO seeks to assign applications for examination in the order in which they are received. Trademark Manual of Examining Procedure (TMEP) § 702.01 (January 2015). When the marks in two or more pending applications filed by different applicants appear to be sufficiently similar that they may ultimately require a refusal of registration under § 2(d), they are considered "conflicting applications." It is USPTO policy to process conflicting applications in the order of their filing dates (or effective filing dates), such that the application having the earliest effective filing date will be the first to proceed toward publication for opposition (if it is eligible for registration on the Principal Register) or toward registration if it is eligible for registration on the Supplemental Register. Trademark Rule 2.83(a), 37 C.F.R. § 2.83(a); TMEP § 1208.01. As for the conflicting applications that have later effective filing dates, the assigned examining attorneys

---

[6] Office Action (first refusal under Section 2(d)) of February 17, 2014 at 7-8.

[7] Office Action (final refusal) of March 11, 2014 at 7-8.

will suspend action until the earlier-filed application either matures into a registration or is abandoned. 37 C.F.R. § 2.83(c); TMEP § 1208.01.

The Underlying Application was filed under Trademark Act § 1(b) on December 7, 2011, *prior to* the filing date of Applicant's application. At some time *after* the filing of Applicant's application, Registrant filed an amendment to allege use and amended the Underlying Application to seek registration on the Supplemental Register. As Applicant correctly points out, Trademark Rule 2.75 provides that when an application originally filed under Section 1(b) "is changed from the Principal Register to the Supplemental Register, the effective filing date of the application is the date of the filing of the allegation of use." 37 C.F.R. § 2.75(b). The incomplete record before us does not reveal the date of filing of the allegation of use, but it appears to have been at least a year after Applicant's filing date of July 23, 2012, because the printout of July 23, 2013 regarding the Underlying Application shows no claimed dates of use.[8] (Logically, it ought to have been at least as late as the date of first use stated on the registration certificate, which is October 17, 2013.) In any event, we are satisfied that the amendment to Registrant's Underlying Application changed its effective filing date to a date *subsequent to* Applicant's filing date.

When these changes to the Underlying Application transpired, Applicant's application was in a state of suspension awaiting the final disposition of the Underlying Application. The reason for suspension was the prospect that the

---

[8] Office Action of July 23, 2013 at 3-4.

Underlying Application might mature into a registration, giving rise to a ground for refusal of registration of Applicant's mark under Trademark Act § 2(d).

As far as we can tell, the change of the effective filing date of the Underlying Application went unnoticed by the Examining Attorney and Applicant prior to the issuance of the registration that is now cited against Applicant. Had Applicant noticed the change prior to such issuance, it would have been in a position to inform the Examining Attorney that its filing date *preceded* that of the effective filing date of the Underlying Application, and to request that its application be removed from suspension so that examination could resume. Had the Examining Attorney noticed the change in filing dates, it would have been her duty, as Applicant correctly points out, to "withdraw [Applicant's] application from suspension and either approve it for publication or take action on any other outstanding issues." TMEP § 206.04. Applicant also cites TMEP § 1208.01, which states that "[i]f the effective filing date in an application containing a conflicting mark changes, the examining attorney should review all the application(s) involved to determine which application has the earliest effective filing date as a result of the change, and notify the examining attorney assigned to the application with the earliest effective filing date."[9]

---

[9] Unfortunately, the Examining Attorney would not have had immediate knowledge of the change in the effective filing date of the Underlying Application, because that application was being examined by another examining attorney. Under USPTO procedures, when the effective filing date of the Underlying Application changed, the examining attorney assigned to the Underlying Application should have conducted a new search for conflicting marks in the USPTO records, TMEP §§ 206.01 and 206.04, a search that should have revealed the existence of Applicant's application. Upon becoming aware of Applicant's application, that examining attorney should have notified the Examining Attorney assigned

As Applicant points out, had the procedures outlined in the TMEP been followed, the progress of Applicant's application would not have been impeded by the Underlying Application; and it is possible that Applicant's application would even have prevented the issuance of the cited registration. The Examining Attorney contends that once the cited registration issued, it was procedurally appropriate for her to cite it as a bar to registration of Applicant's mark;[10] and she points out Applicant's admission that "a registration is a valid basis for refusal under 2(d) (even if the registration happens to have a later filing date than the refused application)."[11] Applicant requests that the Board "craft a remedy," while admitting that "Applicant is fully aware that the remedy in this case is not readily apparent."[12]

We find that the Examining Attorney's refusal of registration was procedurally sound, being based upon Section 2(d) of the Trademark Act, which provides for refusal on the basis of a mark's resemblance to "a mark *registered* in the Patent and Trademark Office…." 15 U.S.C. § 1052(d) (emphasis added). This provision of the statute makes no reference to the filing date of the application underlying the

---

to Applicant's application of the change in the effective filing date of the Underlying Application. TMEP § 206.04.

[10] Examining Attorney's brief, 9 TTABVUE 9.

[11] Applicant's brief at 7, 7 TTABVUE 9. Applicant's suggestion that the Underlying Application had not yet matured into a registration "at the time the Examining Attorney issued the first refusal" is incorrect. The Examining Attorney first refused registration under Section 2(d) in her Office Action of February 17, 2014, and attached a copy of the cited registration, which had issued on December 10, 2013.

[12] Applicant's brief at 7, 8, 7 TTABVUE 9, 10.

registration cited as the basis for the refusal.[13] If the mark is registered, it may be cited as grounds for refusing registration.[14]

The gravamen of Applicant's appeal is that the procedures discussed above were not followed, and that as a result the refusal issued by the Examining Attorney was improper. Applicant's appeal essentially asks us to interpret the TMEP and the Trademark Rules in a way that would be inconsistent with the governing statute, Section 2(d) of the Trademark Act; that is, Applicant asks us to find that a refusal that is clearly authorized by Section 2(d) is invalid because certain examination procedures were not followed during the independent examinations of Applicant's application and the Underlying Application. We cannot give the internal examining procedures of the USPTO such primacy over statutory law. Agency rules and the effect of implementing them must be consistent with the language of the governing statute. *K Mart Corp. v. Cartier Inc.*, 486 U.S. 281, 6 USPQ2d 1897, 1902 (1988) (*citing Board of Governors, FRS v. Dimension Financial Corp.*, 474 U.S. 361, 368 (1986) (*quoting Chevron USA Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984)). The specific examining procedures at issue are not

---

[13] Section 2(d) *does* give regard to filing dates of underlying applications where a concurrent use registration is at issue; but that provision is not relevant to the case before us.

[14] The relevant clause in Section 2(d) provides that registration may be refused based on [1] "a mark registered in the Patent and Trademark Office," or [2] "a mark . . . previously used in the United States by another and not abandoned." Long-standing precedent makes clear that the clauses quoted above provide separate bases for refusal, and that the requirement of priority of use ("previously used . . . and not abandoned") applies only to unregistered marks asserted as a bar to registration. It is for this reason that the Board frequently notes in oppositions that priority of use is not at issue when the opposer establishes its ownership of a registration. *See King Candy Co. v. Eunice King's Kitchen, Inc.*, 496 F.2d 1400, 182 USPQ 108, 110 (CCPA 1974).

expressly required by the terms of the Trademark Act. Strict compliance with those procedures is by no means a prerequisite to issuing a refusal that Section 2(d) of the Act requires.

The same application processing rules that Applicant views as having caused it to suffer an injustice also offered it an opportunity to attempt to avoid the Section 2(d) refusal. After the issuance of the refusal under Section 2(d), Applicant could have instituted a cancellation proceeding against the cited registration under Section 24, 15 U.S.C. § 1092. In that event, prosecution of Applicant's pending application would have been suspended. In the cancellation action, Applicant could have asserted its earlier filing date as a constructive date of first use of its mark for purposes of proving priority. *See* Trademark Act Section 7(c), 15 U.S.C. § 1057(c) ("Contingent on the registration of a mark on the principal register provided by this chapter, the filing of the application to register such mark shall constitute constructive use of the mark, conferring a right of priority … ."). *See also Spirits International B.V. v. S.S. Taris Zeytin Ve Zeytinyagi Tarim Satis Kooperatifleri Birligi*, 99 USPQ2d 1545, 1549 (TTAB 2011); *Truescents LLC v. Ride Skin Care LLC*, 81 USPQ2d 1334, 1339 (TTAB 2006); *Larami Corp. v. Talk To Me Programs Inc.*, 36 USPQ2d 1840, 1844 (TTAB 1995); *Zirco Corp. v. American Telephone and Telegraph Co.*, 21 USPQ2d 1542, 1544 (TTAB 1991). If Applicant's petition for cancellation were successful, the cited registration would have been removed as a bar to Applicant's application. But the owner of the cited registration is not a party

to the appeal now before us, and we can neither cancel nor ignore the registration.[15] After the final disposition of this appeal, Applicant may still seek to cancel the cited registration, relying upon Applicant's alleged actual priority of use, if that can be demonstrated. It bears noting, however, that mere error in the examination of the Underlying Application would not be a valid ground for an *inter partes* challenge to the cited registration. *See AS Holdings, Inc. v. H & C Milcor, Inc.*, 107 USPQ2d 1829 (TTAB 2013), *citing Saint-Gobain Abrasives, Inc. v. Unova Indus. Automation Sys., Inc.*, 66 USPQ2d 1355 (TTAB 2003).

For the reasons stated, the Examining Attorney's refusal, being required by the express terms of Section 2(d), is not rendered invalid by the procedural mishaps described herein. We turn, therefore, to the merits of the Examining Attorney's refusal.

2.   The refusal under Section 2(d).

Our determination under Section 2(d) is based on an analysis of all of the probative facts in evidence that are relevant to the factors bearing on the issue of likelihood of confusion as set forth in *In re E.I. du Pont de Nemours & Co.*, 476 F.2d 1357, 177 USPQ 563, 567 (CCPA 1973). In any likelihood of confusion analysis, two

---

[15] It also must be noted, now that Applicant's appeal has reached the juncture where this final decision is required, that Applicant is not in a position to request a suspension of these proceedings to allow Applicant to seek cancellation of the cited registration. Such a request would, in fact, constitute a request to reopen prosecution of the application. *See In re Vycom Electronics Ltd.*, 21 USPQ2d 1799 (Comm'r Pats. 1991). *See also* 37 C.F.R. § 2.142(g) ("An application which has been considered and decided on appeal will not be reopened except for the entry of a disclaimer … or upon order of the Director …"; and TBMP § 1213 ("A request for suspension of proceedings before the Board in an ex parte appeal must be filed prior to the issuance of the Board's final decision in the case.")

key considerations are the similarities between the marks and the similarities between the goods and services at issue. *See Federated Foods, Inc. v. Fort Howard Paper Co.*, 544 F.2d 1098, 192 USPQ 24, 29 (CCPA 1976).

    (a)   <u>The marks</u>.

We first consider the similarity or dissimilarity of the marks at issue in their entireties as to appearance, sound, connotation and commercial impression. *See Palm Bay Imports, Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 73 USPQ2d 1689 (Fed. Cir. 2005). The marks are identical. Even though the registered mark is set forth on the registration certificate in upper-case and lower-case letters (*i.e.*, House Beer), it is, like Applicant's mark, a "standard character" mark, "without claim to any particular font, style, size or color." Accordingly, the *du Pont* factor of the similarity or dissimilarity of the marks weighs in favor of a finding of likelihood of confusion.

    (b)   <u>The goods and services</u>.

We next consider the similarity or dissimilarity of the goods and services of Applicant and Registrant. We bear in mind that where identical marks are involved, as is the case here, the degree of similarity between the goods and services that is required to support a finding of likelihood of confusion declines. *In re Shell Oil Co.*, 992 F.2d 1204, 26 USPQ2d 1687, 1688-89 (Fed. Cir. 1993); *Time Warner Entertainment Co. v. Jones*, 65 USPQ2d 1650 (TTAB 2002); and *In re Opus One Inc.*, 60 USPQ2d 1812 (TTAB 2001). The cited mark is registered for "beer." Applicant seeks to register its mark for "Retail store services featuring beer."

In order to demonstrate that beer is commercially related to retail stores featuring beer, the Examining Attorney has presented webpages from the Internet[16] showing the following:

- A bottled ale offered under the mark TRADER JOE'S; and a webpage showing that stores are operated under the mark TRADER JOE'S.

- A bottled lager offered under the mark BLUE MOUNTAIN and a webpage indicating that the beers of Blue Mountain Brewery are available "at our brewery restaurant."

- A brewery called LOST RHINO BREWING COMPANY that offers a Pilsner under the mark RHINO CHASERS; and a webpage showing that the brewery has a tasting room and conducts events where its beers are offered along with live music.

The Examining Attorney has also submitted four third-party registrations in order to further demonstrate that Applicant's services and Registrant's goods are commercially related.[17] Third-party registrations which individually cover different goods and services and are based on use in commerce may have some probative value to the extent that they serve to suggest that the listed goods and services are of types which may emanate from the same source. *In re Albert Trostel & Sons Co.,* 29 USPQ2d 1783, 1785-86 (TTAB 1993); *In re Mucky Duck Mustard Co. Inc.,* 6 USPQ2d 1467, 1470 n.6 (TTAB 1988). The registrations cover (*inter alia*) the goods and services indicated below:

Reg. No. 4458365      Beer; Retail store services featuring beer.

Reg. No. 4319000      Beer; Retail store and on-line retail store services featuring beer [and other goods].

---

[16] Office Action of February 17, 2014 at 23-50.

[17] *Id*. at 9-22.

Reg. No. 3060794     Beer; Retail store services featuring convenience store items and gasoline.

Reg. No. 3955170     Beer … relating to the STURGIS motorcycle rally; on-line retail store services.[18]

Only the evidence relating to the TRADER JOE's trademark and two of the third-party registrations (Nos. 4458365 and 4319000) squarely support the Examining Attorney's position.[19] However, it has often been recognized that likelihood of confusion may arise where confusingly similar marks are used on goods, on the one hand, and in connection with sales of such goods, on the other. *See In re Wet Seal, Inc. v. FD Management, Inc.*, 82 USPQ2d 1629, 1640 (TTAB 2006); 4 J. Thomas McCarthy, *MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION* § 24:25 (4th ed. 2014). As our principal reviewing court has noted, "trademarks for goods find their principal use in connection with selling the goods" and accordingly marks for goods and marks for the service of selling such goods will have their impact on the purchasing public in the same marketplace. *In re Hyper Shoppes (Ohio), Inc.*, 837 F.2d 463, 6 USPQ2d 1025, 1025 (Fed. Cir. 1988). In this case, the marks are identical and the goods and services at issue are commonplace goods and services

---

[18] We give little weight to this 16-class registration, as nearly all of the goods and services are apparently collateral goods and services associated with a motorcycle rally.

[19] We have noted the Internet evidence submitted by the Examining Attorney with her Office Action of March 11, 2014 at 9-17; however, we do not find it probative of a commercial relationship between beer and stores that sell beer. The webpages of FWB winery and brewery and Schnebly winery and brewery show that breweries make and sell beer; but a brewery is not the same as "retail store services featuring beer." Moreover, the webpages do not show that the beer produced by each brewery is marked with a trademark that is the same as, or similar to, that of the brewery.

with which most consumers would be familiar. The evidence is sufficient to persuade us that if customers were to encounter beer under a mark that is identical to the mark of a retail store that features beer, they would likely believe that the product and the service are related. Accordingly, we find that the *du Pont* factor of the similarity or dissimilarity of the goods and services favors a finding of likelihood of confusion.

Applicant and the Examining Attorney have not presented evidence or argument as to other *du Pont* factors and, accordingly, we treat those factors as neutral.

(c)　Conclusion.

We have considered all of the arguments and evidence of record, including those not specifically discussed herein, and all relevant *du Pont* factors. As the marks at issue are identical and the goods and services at issue are related, we find that Applicant's mark, used in connection with Applicant's services, so closely resembles the registered mark as to be likely to cause confusion, mistake or deception as to the source of Applicant's services.

*Decision***:** The refusal to register is affirmed.